IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CENTRAL VALLEY AG COOPERATIVE, for itself and as Fiduciary of the Central Valley Ag Cooperative Health Care Plan; and CENTRAL VALLEY AG COOPERATIVE HEALTH CARE PLAN,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL K. LEONARD, SUSAN LEONARD, THE BENEFIT GROUP, INC., ANASAZI MEDICAL PAYMENT SOLUTIONS, INC., CLAIMS DELEGATE SERVICES, LLC, LINUS G. HUMPAL, and GMS BENEFITS, INC.,<br><br>Defendants. | **8:17CV379**<br><br>**MEMORANDUM AND ORDER** |

Pending before me is Plaintiff's motion to continue the court-ordered case progression deadlines; specifically, the expert witness disclosure deadline and trial setting. (Filing No. 133). For the reasons stated below, the motion will be granted in part.

STANDARD OF REVIEW

Pursuant to Rule 16(b)(4), a case management order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The movant's level of diligence and the degree of prejudice to the parties are both factors to consider when assessing if good cause warrants extending a case

management deadline, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only after the movant makes a showing of due diligence. [Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008)](#); [Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006)](#).

## STATEMENT OF FACTS

The Plan at issue has spawned multiple lawsuits, only one of which is pending in this forum. Others include "the Methodist Hospital litigation," a malpractice case, and a defamation lawsuit filed against Central Valley Ag Cooperative ("CVA") by some or all the defendants in this litigation. In addition, CVA's attorney has questioned the ethics of one of the opposing attorneys, and The Benefit Group, Inc. ("TBG") has sent several Rule 11 letters to CVA[1]. The resulting undercurrent of acrimony has frequently threatened to drown the orderly case progression of this federal lawsuit.[2] So far, at the parties' request, the undersigned magistrate judge has held six case conferences[3]—totaling over five hours—attempting to understand and rule on the parties' ongoing discovery and case progression disputes. From that background, and after reviewing the case filings and evidence of record, the undersigned magistrate judge provides the following summary of facts relevant to the pending motion.

---

[1] Central Valley Ag Cooperative is the sole, remaining plaintiff in this action (see Filing No. 59).

[2] See e.g., Filing No. 150, at 33:50-34:10) (describing this lawsuit as "so accusatory it's been basically nuclear war from the beginning").

[3] Other than the first conference to discuss case progression, each of the conferences was recorded, with the audio files uploaded to the docket. See Filings Nos. 80, 103, 124, 149, and 150.

CVA's counsel has represented CVA regarding alleged improprieties in the Central Valley Ag Cooperative Health Care Plan ("the Plan") and its claims handling since at least 2016. On October 10, 2017, CVA retained an accounting firm, BKD, to: 1) "audit the financial statements" of the Plan for 2014 through 2016; and 2) "express an opinion on whether supplemental schedule(s) required [under ERISA] were fairly stated, in all material respects, in relation to the financial statements as a whole," as required under ERISA reporting requirements. (Filing No. 142-3).

The following day, October 11, 2017, CVA filed its verified complaint and a motion for temporary restraining order. These initial filings were signed by CVA's current attorney of record. The TRO motion alleged "the ongoing harm caused by Defendants' multiple breaches of fiduciary duties will result in immediate and irreparable injury, loss, and continued harm to CVA and the Plan if injunctive relief is not granted . . . ." (Filing No. 3, at CM/ECF p. 2). Among other things, CVA asked the court to order expedited discovery and an immediate forensic audit of the Plan by Bill Kenedy and Taylor Pugh of the Lutz accounting firm at Defendants' cost and with their full cooperation. (Filing No. 3, at CM/ECF pp. 2-3). As to discovery, CVA argued:

> Plan assets, participant claims files, and other records of the Plan are needed in order to pay participant claims, ascertain the amount of stop loss insurance proceeds to which the Plan is entitled, and to assure protection of Plan assets. Expedited discovery will facilitate the ability of CVA and its auditors and attorneys to put the affairs of the Plan in order for the protection of the participants.

(Filing No. 3-1, at CM/ECF p. 18). CVA argued that the court must act immediately because the Defendants' actions were causing harm to the Plan, with health claims left unpaid and Plan participants facing creditor collection and being denied access

3

to health care. (Filing No. 3-1, at CM/ECF p. 10-11; Filing No. 101, at CM/ECF p. 12).

The TRO hearing was held before Judge Smith Camp on October 17, 2017. (Filing No. 101). During that hearing, CVA counsel stated CVA had retained experts, Kenedy and Pugh from the Lutz accounting firm, to perform a forensic audit and to evaluate claims against the Plan and make sure the proper amounts were being paid. (Filing No. 101, at CM/ECF pp. 9, 12). CVA's counsel explained:

> [I]f money is being diverted from this plan, if claims are being paid in a way that they shouldn't, if health care providers are being strong-armed, then this is an urgent situation.
>
> And the forensic audit and the expedited forensic audit is necessary for the client and the plan to know where the money is, who has been paid the money, in what amount, and for what reason.

(Filing No. 101, at CM/ECF pp. 51-52).

CVA's motion for a TRO was denied on October 26, 2017. (Filing No. 33). The following day, CVA served a Notice of Request to Audit on Defendant TBG. (Filing No. 142-4).

During the last quarter of 2017, Defendant TBG responded to requests for documentation made by CVA's retained accountants. (Filing Nos. 142-5, 142-6). As explained by TBG's counsel,

> On November 27, 2017, The Benefit Group provided CVA's auditors with searchable Excel spreadsheets in native format bates labeled TBGAudit905, 906, 907 and 908. These spreadsheets were The Benefit Group's claims detail history from January 1, 2013 through December 31, 2017. These reports contain hundreds of thousands of lines of data regarding claims. For example, TBGAudit907 consisted of approximately 78,000 rows of data with each row having dozens of

columns identifying the name of the claimant, the claim number, the date the claim was received, the date the claim was processed, the date the claim was paid, the name of the service provider, a description of the service, total charges, allowable charges, not covered amount, PPO savings, amount paid by other insurance, coinsurance, deductible, amount paid, and check number for the payment among other information.

(Filing No. 142-1, at CM/ECF p. 2, ¶ 11).

CVA's demand doubled from $3,000,000 to $6,000,000 on November 15, 2017. (Filing No. 142-10). In addition to accounting firms BKD and Lutz, CVA retained Beau Reid, Division Leader for Holmes Murphy and Associates, as a consulting expert in December 2017, (Filing No. 104). So, by the end of 2017, Plaintiffs had retained three experts for assistance with auditing the Plan and/or deciphering the claims, payments made to medical providers, and the amounts received by Defendants. During November or December of 2017, CVA became aware of previously undisclosed documents possessed by TBG and Anasazi Medical Payment Solutions, Inc. ("AMPS"). These documents, referred to hereafter as AMPS invoices, included information CVA and its experts believed was crucial in understanding how claims were handled and money was spent by the Plan. (Filing No. 150). CVA claims it demanded this documentation in late 2017 and again in February 2018, but TBG and AMPS did not provide it. (Filing No. 150).

CVA filed an amended complaint on October 31, 2017, (Filing No. 34), and a second amended complaint (without leave of the court) on November 15, 2017. (Filing No. 35). On December 18, 2017, Defendants filed motions to dismiss. (Filing Nos. 36, 38, 40). CVA did not respond to the motions to dismiss. Instead, it used the arguments raised in Defendants' briefs to add allegations to a proposed third amended complaint and it moved for leave to file that version complaint on January 4, 2018. (Filing No. 43).

This flurry of motion practice was fully submitted on January 25, 2018. The undersigned magistrate judge dissected CVA's proposed 79-page third amended complaint and issued findings and recommendations on the pending motions on March 29, 2018. No objections were filed to those findings and recommendations, and they were wholly adopted by Judge Smith Camp on May 1, 2018. (Filing Nos. 58 and 59). On May 7, 2018, CVA filed its third amended complaint, modified consistent with the court's order to remove, among other claims, CVA's claim for recovery under RICO. (Filing No. 60) The Defendants' answers were filed on or before May 22, 2018. (Filing Nos. 61, 62, 63, 64).

While the motions to dismiss and CVA's motion to amend were pending, CVA pursued a complaint before the Nebraska Department of Insurance, (Filing No. 142-11); met with the Lutz accounting firm to review the case, (Filing No. 142-12); and secured Kenedy's affidavit regarding his investigation and verifications of the financial aspects of the administrative services provided to the Plan by TBG and other service providers from 2014 through 2017 (Filing No. 142-13). CVA requested and TBG provided additional documents and information for the audit being conducted by Lutz. (Filing No. 142-7, 142-8; 142-23), and TBG provided to BKD the check register information and documents for a sampling of 152 claims. (Filing No. 142-1, at CM/ECF p. 2-3, ¶ 12, 18; 142-9).

CVA states it again requested the AMPS invoices in February of 2018. It also asserts that it requested bank records during the audit and was led to believe only one bank account existed, the records for which were provided to CVA by TBG. However, in April of 2018, CVA realized through its experts that additional bank accounts existed and the documentation from those accounts was missing. (Filing No. 150). TBG states it told CVA in late 2017 that the bank accounts contain

information for several clients, and those records cannot be released absent a protective order. (Filing No. 150, at 32:20-32:55).

On June 4, 2018, the court entered a scheduling order which required the parties to meet, confer, and jointly complete a Rule 26(f) Report. (Filing No. 65). The parties convened a Rule 26(f) conference, and they attempted to draft the joint report, (Filing No. 135, at CM/ECF p. 4), but they could not agree on case scheduling deadlines. Defendants asked that CVA's expert reports be served on or before November 30, 2018; CVA requested a May 15, 2019 expert report deadline. (Filing No. 135, at CM/ECF p. 22). Defendants requested an August 2019 trial date; CVA requested an April 2020 trial date. (Filing No. 135, at CM/ECF p. 135).

The court convened a scheduling conference. At that conference, CVA's counsel explained that collectively from all Defendants, they had received nearly 1300 discovery requests. See Filing No. 146, at CM/ECF p. 9. Defendants explained that they needed to use discovery to flush out CVA's contentions as to each Defendant. The court noted that several defendants were sued, the operative complaint is extensive, and CVA engaged in group pleading, with defendants as a group allegedly responsible for most of the actions or inactions underlying CVA's claims. After hearing the parties' arguments,[4] the court did not strike or limit Defendants' discovery as CVA requested. Instead it ordered:

> To promote the goals outlined in Rule 1 of the Federal Rules of Civil Procedure, the parties shall promptly confer in good faith to streamline both the allegations within the complaint and the corresponding discovery requests, thereby avoiding global allegations which, in turn, prompt global discovery served on or received from each named defendant.

---

[4] This conference was not recorded.

(Filing No. 77, at CM/ECF p. 1-2, ¶ 3).

During the scheduling conference, Defendants expressed concern with any delayed resolution of this case, and the court was aware of CVA's arguments in support of its request for a TRO. As such, trial was set to commence on August 13, 2019, with counsel ordered to "**govern their case preparation accordingly**."[5] (Filing No. 77, at CM/ECF p. 1, ¶ 1) (emphasis in original).

Within a week after this order was entered, CVA's counsel requested a discovery dispute conference. That conference was held on July 19, 2018. (Filing No. 80). CVA's counsel explained that CVA needed 60 days to respond to Defendants' discovery, with an August 24, 2018 due date—a request the defendants did not oppose. However, TBG and AMPS demanded that any objections to their interrogatories still be made within the 30-day limit set by the Federal Rules. In addition, TBG asked for guidance on whether the court interpreted TBG's interrogatories as exceeding the 50-question limit to which the parties agreed. After discussing the pending discovery, reviewing the interrogatories at issue, and hearing the parties' respective positions, the court concluded TBG's interrogatories did not exceed the limit of 50, and that objections to interrogatories should be served within the deadline set by Rule 33(b)(2), or that CVA provide an explanation, by interrogatory, as to why objections could not be made within 30 days. (Filing No. 80).

---

[5] CVA argues the current trial setting can be extended and remain within the common time frame for civil cases filed in this forum. The undersigned magistrate judge sets trial dates on a case-by-case basis. Moreover, the current trial setting is 22 months following the date of filing—which is beyond this forum's goal for resolution by trial.

While responding to Defendants' discovery in June and July of 2018, CVA realized documents referred to as "Reports of Recommendations" existed and those documents had not been fully disclosed in the auditing process. (Filing No. 150).

CVA's mandatory disclosures were served on July 23, 2018. Those disclosures did not include a damage calculation. (Filing No. 142-18). Defendants requested supplementation, (Filing No. 142-19), and received further damage disclosures on August 1, 2018. (Filing No. 142-20). But CVA has not answered Defendant Claims Delegate Services, LLC's ("CDS") interrogatory asking for "all facts supporting your contention that the compensation you identified was 'excess compensation,'" (Filing No. 143-3, at CM/ECF p. 3, Interrogatory 3); AMPS' interrogatory requesting the method of computing Plaintiff's damage claims, (Filing No. 143-2, at CM/ECF p. 5, Interrogatory 18); or TBG's interrogatory requesting "a current and complete itemization of the special damages claimed, including but not limited to an explanation of how the Plan 'suffered damages in excess of $6 million' as a result of The Benefit Group's alleged actions." (Filing No. 142-21, at CM/ECF p. 2, Interrogatory 21). CVA has not stated the amount of "undisclosed" compensation allegedly received by Defendant GMS Benefits, Inc. ("GMS") or Defendants Daniel K. and Susan Leonard, nor has it explained with specificity the facts supporting that damage claim. (Filing No. 144-3, at CM/ECF p. 4, Interrogatories 2-5).

Another discovery dispute arose in September of 2018, and a conference on that dispute was held on September 14, 2018. (Filing No. 103). TBG had served a records subpoena on Holmes Murphy and Associates (Beau Reid's firm), and CVA objected to portions of the subpoena as requesting work product. After discussing the circumstances, the court concluded Reid was both a fact witness

and a CVA consulting expert. With the parties' consent, the court entered an order which limited TBG's records subpoena and explained when and to what extent a privilege log is necessary. (Filing No. 104).

CVA did not begin serving its own written discovery until September 20, 2018. On that date, it served discovery on GMS, followed by TBG on October 5, 2018, and AMPS on October 29, 2018. (Filing No. 124, at 21 134).

A case management and discovery dispute conference was held on October 26, 2018. By the time of this call, CVA had conducted two audits of the Plan. During that conference, Defendants expressed concern that although the case is a year old, CVA had yet to explain with specificity how its $6 million damage claim was calculated. (Filing No. 150). CVA explained it cannot disclose its expert reports until all fact discovery is complete. CVA explained that the AMPS invoices—known by CVA to be missing from TBG's voluntary production since late 2017—"lay out exactly the information that we need." (Filing No. 150, at 34:45-35:05).

After listening to the arguments, and noting the documents CVA stated it needed for expert disclosures were going to be produced to CVA (and to its already retained experts) by early-November, the court set the following expert witness disclosure deadlines:

> The deadlines for complete expert disclosures for all experts expected to testify at trial, (both retained experts, (Fed. R. Civ. P. 26(a)(2)(B)), and non-retained experts, (Fed. R. Civ. P. 26(a)(2)(C)), are:
>
> For the plaintiff(s):     December 31, 2018.
> For the defendant(s):   March 1, 2019.
> Rebuttal experts:        April 1, 2019

(Filing No. 111). The court also set an April 5, 2019 conference call to discuss the status of the case, explaining that by then, the parties will have exchanged all expert reports, and they should have an understanding of the damage claims and defenses, with expert witness depositions already calendared. Although no one objected to this order, Plaintiff now argues "the entry of an Order providing only two months' notice for Plaintiff to provide complete expert reports worked exclusively to Plaintiff's detriment and provided Defendants with an immeasurable advantage." (Filing No. 146, at CM/ECF p. 10).

On October 30 and 31, 2018, CVA served notices of intent to serve subpoenas on a total of 20 hospitals. (Filing No. 135, at CM/ECF pp. 31-38). At least 14 of the hospitals objected. (Filing No. 135, at CM/ECF p. 40-80). CVA also served a notice of intent to subpoena bank records from American National Bank.

CVA received the AMPS invoices by November 5, 2018. But several new discovery disputes arose, and a two-hour conference call was held on November 16, 2018. The court modified the American National Bank subpoena to request only account numbers, not the actual documents within those accounts. This modification apparently resolved that dispute. CVA was also demanding production of AMPS reports (which are different than AMPS invoices) and AMPS claim files for the medical payments made under the Plan. CVA served document production requests for this information on TBG on October 5, 2018, and on AMPS on October 29, 2018. Since AMPS was in a better position than TBG to provide this information, TBG deferred production of AMPS reports and claims files to AMPS. At the time of the call, AMPS was prepared to serve the AMPS reports on November 19, 2018 (three weeks late as to the discovery served on TBG, but 10 days early as to AMPS), and AMPS was preparing to produce the claims reports the week after Thanksgiving (60 days after TBG was served with discovery

requesting these reports, and 30 days after AMPS was served). As to the hospital subpoenas, the court narrowed the requests. In the course of that discussion, the court learned that CVA (the named Plan administrator) does not have an unredacted copy of the Plan's PPO contract with the hospital providers for 2015. CVA agreed to first attempt to get an unredacted version of that document from First Health and Premier Health Exchange instead of the hospitals.

Although two audits had already been completed, CVA requested a continuance of the expert disclosure deadlines. CVA's counsel acknowledged that she did not speak with CVA's experts about what was needed to prepare for trial until late-June of 2018. (Filing No. 124). And the court was aware that even though CVA knew it needed AMPS invoices, additional bank account records, and reports and recommendations before the first Rule 26(f) conference occurred, CVA did not serve any written discovery on the defendants who possessed this information— TBG or AMPS—until October 2018. After balancing CVA's fervent request for an extension of the discovery deadline against Defendants' equally fervent objection to waiting any longer to find out, with specificity, what they allegedly did wrong and how CVA's alleged damages were calculated, the court extended the expert deadlines as follows:

> [T]he deadlines for serving complete expert disclosures for all experts expected to testify at trial, (both retained experts, (Fed. R. Civ. P. 26(a)(2)(B)), and non-retained experts, (Fed. R. Civ. P. 26(a)(2)(C)), are extended to:
>
>> ---For the plaintiff(s): January 15, 2019;
>> ---For the defendant(s): March 15, 2019; and
>> ---Rebuttal experts April 1, 2019.

(Filing No. 125).

On November 20, 2018, CVA's counsel notified defense counsel as follows:

> We will need to depose your company representatives on the following dates:
>
> Tuesday, December 18: Dan Leonard
> Wednesday, December 19: Linus Humpal
> Thursday, December 20: Mike Dendy
> Friday, December 21: Kirk Fallbacher
>
> All will begin at 10 a.m. Notices will follow shortly, but we wanted to provide you with as much advance notice as possible. All depositions will be noticed at your respective offices (the AMPS depositions at Cline Williams) -- unless you let us know you would like to use another location.

(Filing No. 135, at CM/ECF p. 29).

Prior to the depositions, Defendants agreed that CVA's experts could attend the depositions either in person or by telephone. In addition, believing Kenedy would likely be one of CVA's expert witnesses and his report would be available to Defendants in January 2019, on November 26, 2018, TBG requested dates to take Kenedy's deposition in February. On December 12, 2018, CVA's counsel stated Kenedy was not a testifying expert and his deposition is unnecessary. (Filing No. 142-1, at CM/ECF p. 4, ¶ 29, 30).

Due to previous commitments, scheduling the defendants' depositions proved difficult. (Filing No. 135, at CM/ECF p. 81-97). On December 12, 2018, CVA noticed the deposition of TBG's President, Linus Humpal, to be held on December 19, 2018.

CVA filed the pending motion to continue the case progression deadlines on December 14, 2018. (Filing No. 149).

TBG served supplemental discovery on December 12, 2018, producing 58 emails totaling 550 pages, including 285 pages of a spreadsheet printed in a portrait layout and a 50-screen PowerPoint presentation. (Filing No. 147-1; 147-3). AMPS uploaded for cloud service and distribution approximately 8005 pages (2000 documents) of supplemental discovery at approximately 3:30 p.m. on December 14, 2018. (Filing No. 147-2). On December 17, 2018, TBG produced an additional 12 pages of emails.

CVA's counsel from New Orleans flew into Omaha on Monday, December 17, 2018, in advance of Humpal's deposition scheduled for December 19, 2018. However, CVA's counsel did not download the documents AMPS had uploaded on December 14, 2018 until the morning of December 18, 2018. At 12:40 p.m. on December 18, 2018, the court was asked to schedule an immediate conference on the parties' dispute over continuing Humpal's deposition due to TBG's and AMPS' late document disclosure. The court could not schedule the conference that afternoon. Instead, it was set to commence at 8:30 a.m. on December 19, 2018, with Humpal's deposition scheduled to begin at 9:00 a.m. (Filing No. 149).

In support of its pending motion to continue, Plaintiff states that during the conference on December 19, 2018:

> The Court did not consider Plaintiff's request to extend the expert disclosure deadlines and allowed for the continuance of the deposition of Mr. Humpal only if Plaintiff would bear its own costs of having its counsel travel to Omaha for that deposition, and pay for the costs of AMPS' counsel in making the trip.

(Filing No. 146, at CM/ECF p. 5-6). That characterization is not entirely correct.

At the outset of the conference, the court stated it would not consider CVA's pending written motion to continue because the defendants had not responded and their response was not due until December 28, 2018. The court clarified that the only issue to be addressed during the call was whether Humpal's deposition would be continued. The court stated it would not force CVA to proceed with the deposition if it was not prepared to do so, and if it chose to go forward, and something new and material was later found in the emails disclosed on or after December 12, 2018, the court would consider permitting a supplemental deposition as to that new information. (Filing No. 149, at 18: 25-18:46). But the court warned that if CVA chose not to proceed, there was nonetheless no guarantee the court would continue the case progression deadlines. The court also stated the travel costs of AMPS' counsel to attend the deposition would likely be assessed against CVA since CVA could have downloaded AMPS' December 14 disclosure before anyone traveled to Omaha, and then promptly advised everyone that the deposition needed to be re-scheduled. In the end, the court wanted to know whether AMPS received an "out-of-office" message from CVA's counsel when the December 14 notice of upload was sent, stating the answer to that question was relevant in deciding whether AMPS' travel costs would be assessed. In a post-hearing email, CVA's counsel confirmed that AMPS was not notified by an out-of-office email message that CVA's counsel did not receive AMPS' disclosure on Friday afternoon. (Filing No. 149).

CVA proceeded with the deposition of Humpal on December 19, 2018, questioning him for 6 hours and 52 minutes. CVA scheduled the deposition of Mr. Fallbacher for January 4, 2019, and the deposition of Dan Leonard for January 8, 2019. AMPS' counsel advised that Mike Dendy, AMPS' former CEO, would be available for a deposition beginning the week of January 7, 2019, however, that deposition had not been scheduled as of December 28, 2018. (Filing No. 142-1, at

CM/ECF p. 3-4, ¶ 24). On January 4, 2019, GMS served supplemental discovery (4,333 pages of documents). (Filing No. 147-12). That same day, CVA deposed Kirk Fallbacher, AMPS' CEO, but that deposition ended prematurely due to a serious injury sustained by the court reporter's mother. (Filing No. 148).

Against this extensive procedural backdrop, the court now considers CVA's motion to continue the expert disclosure deadlines.

ANALYSIS

CVA moves to continue the trial date, currently set for August 13, 2019, until early November 2019, and to continue the expert witness disclosure deadlines from January 15, 2019 to April 15, 2019 for CVA; from March 15, 2019 to May 15, 2019 for Defendants; and from April 1, 2019 to June 1, 2019 for CVA's rebuttal. (Filing No. 133). CVA argues it cannot meet the current scheduling deadlines despite its diligent efforts, (Filing No. 134, at CM/ECF p. 9); Defendants will not be prejudiced by CVA's requested extension, (Filing No.134, at CM/ECF p. 12); and the undersigned magistrate "routinely grants extensions in excess of Plaintiff's request." (Filing No. 134, at CM/ECF p. 13).

Beginning with the last argument, I do continue case progression deadlines when convinced that doing so is necessary and consistent with the Federal Rules as interpreted by the Supreme Court and the Eighth Circuit Court of Appeals. As to every case cited by counsel, the court granted a jointly requested motion to continue based on the parties' arguments explaining why a continuance was appropriate. Lorenzen v. Taste Traditions of Omaha, LLC., No. 8:16CV27 (D. Neb. Sept. 29, 2017) (cross-motions for summary judgment were filed and to avoid incurring potentially unnecessary expenses, depositions of multiple experts were

delayed pending the outcome of those motions; summary judgment was later granted); Andersen v. Envisions, Inc. No. 8:17CV475 (D. Neb. Dec. 12, 2017) (60-day continuance granted because written discovery was delayed while the parties resolved their discovery disputes); Lissett Larios Rookbakhsh, et al. v. Board of Trustees of the Nebraska State Colleges, et al., No. 8:17CV31 (D. Neb. Jan. 30, 2017) (no evidence of dilatory conduct by either party, and a substantial number of potential trial witnesses disclosed, including many experts).

Here, the parties have not jointly moved to continue the case. Instead, Defendants vehemently oppose the motion.[6]

The court's progression order (Filing No. 77) included minimal case progression deadlines for a reason. During that call, CVA's counsel was encouraged to confer with opposing counsel to explain the Defendants' respective roles in the alleged mishandling and/or misappropriation of Plan funds. With those clarifications, Defendants' discovery could have been narrowed. That did not happen. Instead, the complaint was not amended and CVA faced substantial discovery. With the consent of all Defendants, CVA was afforded 60 days to serve its answers and responses.

CVA argues a continuance of the expert disclosure deadline and trial setting is necessary, explaining:

> Under the current deadlines, Plaintiff is unable to thoroughly analyze the 68,650 pages of documents it has received, let alone prepare for

---

[6] Upon receiving CVA's brief, I analyzed the civil cases I have managed over the last five years. That analysis revealed that after applying the law stated in Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008), I have granted only 20% of opposed motions to continue case progression deadlines.

and conduct the depositions necessary to generate its expert reports. Moreover, under the current time restrictions, Plaintiff will be unable to: (1) conduct additional written discovery with the aid of an expert's direction; (2) provide its expert witnesses with deposition transcripts in time to be reviewed and incorporated into their expert reports; (3) conduct 30(b)(6) depositions of any party following individual depositions; (4) resolve the numerous objections it has received from third party hospitals, to whom Plaintiff has issued subpoenas, which limits Plaintiff's ability to provide its experts with the facts needed to complete their reports; and (5) serve additional written discovery that may become necessary following depositions.

(Filing No. 134, at CM/ECF pp. 11-12).

The court is not convinced that CVA has been unable to analyze the voluminous documents provided in this case prior to the current expert deadline. Two accounting audits of the Plan were completed months ago, and three experts have been working on this case on CVA's behalf for over a year. In addition, during the pendency of this litigation, CVA's complaints were reviewed at its request by the Nebraska Department of Insurance.

CVA claims that absent a continuance, it will be unable to obtain additional discovery requested by its experts. But despite having three experts retained six months before the Rule 26(f) conference, CVA did not promptly serve written discovery after that conference. At the time of that conference, CVA knew it needed, had already demanded, and had never received AMPS invoices, complete bank records, and reports and recommendations requested by its experts. Yet it served no written discovery on any defendant until three months (GMS) and up to four months (AMPS) after that conference.

Moreover, when the court set the December 31, 2018 expert disclosure deadline, CVA's counsel stated the AMPS invoices would provide the critical

information CVA's experts needed to formulate their opinions. CVA received these invoices by November 5, 2018, affording CVA's experts eight weeks to review the information and draft their reports. During the conference on November 16, 2018, CVA explained its experts could not evaluate the case without first receiving the AMPS reports and claims files. Those documents were disclosed on November 19, 2018 and November 28, 2018, respectively. At CVA's urging, and over Defendants' objection, the court extended the expert deadlines by two weeks, leaving no less than six weeks for CVA's experts to incorporate the AMPS reports and claim information into their ongoing analysis.

In the current motion, CVA argues it cannot disclose expert opinions until all written discovery and fact witness deposition discovery is complete. But there is no evidence (e.g., expert affidavit or declaration) supporting this claim, and CVA requested no depositions until 13 months after the case filing date. Perhaps more importantly, CVA was able to schedule Defendants' depositions to occur before the current expert disclosure deadline, and with Defendants' consent, CVA's experts were afforded the opportunity to attend the depositions, either in person or by telephone.

CVA claims the defendants untimely disclosed emails in December 2018 and January 2019, which has jeopardized CVA's ability to adequately depose witnesses and supports another continuance of the expert witness deadlines. The December 2018/January 2019 disclosures were untimely. But as to Humpal's deposition, TBG's email disclosures on December 12 and December 17, 2018 did not prompt CVA to consider continuing that deposition. The December 17 disclosure was only 12 pages, and even after receiving the December 12 disclosure, CVA apparently intended to move forward, as evidenced by the fact that its counsel from New Orleans travelled to Nebraska on December 17, 2019 to

assist with Humpal's deposition. As to the AMPS emails disclosed on December 14, 2018, and any emails disclosed thereafter, CVA has failed to show that this information was new, material, and unexplored during Humpal's seven-hour deposition conducted on December 19, 2018. And there is no showing that CVA's experts consider this late-disclosed information, or any explanation of it through Defendants' testimony, material in formulating their opinions.

CVA claims it needs additional time to resolve the objections to its subpoenas of hospital records. Those subpoenas were not served until October 30, 2018, the hospitals' objections were raised six weeks ago, and to the court's knowledge, CVA has not pursued the issue thereafter.

Finally, CVA claims the expert deadlines and trial must be continued because additional written discovery may be necessary following depositions. This speculative concern cannot justify continuing deadlines within a court order. There is no showing of what discovery may be needed, that this discovery is material to any expert's opinion, and that it cannot be obtained without adjusting the current case deadlines.

The court's progression order set an August 13, 2019 trial date. (Filing No. 77, at CM/ECF p. 1, ¶ 1). CVA has not shown that despite its diligent efforts, it cannot be prepared for trial as currently scheduled. The court notes, however, that CVA was unable to complete the January 4, 2019 deposition of Kirk Fallbacher, AMPS' CEO, due to a medical emergency. It is unlikely this deposition can be re-scheduled and completed, transcribed, and reviewed by CVA's experts before January 15, 2019. While CVA has failed to produce any evidence that its experts need this deposition testimony as a basis for their opinions, the court will

nonetheless continue CVA's expert deadline by two weeks, with the remaining expert deadlines adjusted accordingly.

The court's progression order set the August 2019 trial date and it ordered counsel to "**govern their case preparation accordingly**." (Filing No. 77, at CM/ECF p. 1, ¶ 1) (emphasis in original). As exemplified by the history of this lawsuit, that order was clearly insufficient. The parties need a more structured progression schedule.

Accordingly,

IT IS ORDERED that Plaintiff's motion to continue, (Filing No. 133), is granted, in part, as follows:

1) The trial of this case remains set to commence before Laurie Smith Camp, Senior United States District Judge, in Courtroom 2, Roman L. Hruska Federal Courthouse, 111 South 18th Plaza, Omaha, Nebraska, at 9:00 a.m. on **August 13, 2019**, or as soon thereafter as the case may be called, for a duration of ten (10) trial days. This case is subject to the prior trial of other civil cases that may be scheduled for trial before this one.

2) The Pretrial Conference is scheduled to be held before the undersigned magistrate judge on **July 30, 2019** at **11:00 a.m.**, and will be conducted by internet/telephonic conferencing. Counsel shall use the conferencing instructions assigned to this case to participate in the conference. The parties' proposed Pretrial Conference Order and Exhibit List(s) must be emailed to zwart@ned.uscourts.gov, in Word format, by 5:00 p.m. on July 29, 2019.

3) A telephonic conference to discuss the status of case progression and the parties' interest in settlement will be held with the undersigned magistrate judge on **April 5, 2019** at **10:00 a.m.** by telephone. Counsel shall use the conferencing instructions assigned to this case to participate in the conference.

4) The deadline to file any motion to strike a party's jury demand is April 30, 2019.

5) The deadline for completing written discovery under Rules 33, 34, and 36 of the Federal Rules of Civil Procedure is February 15, 2019. Motions to compel discovery under Rules 33, 34, and 36 must be filed by March 1, 2019.
**Note:** A motion to compel, to quash, or for a disputed protective order shall not be filed without first contacting the chambers of the undersigned magistrate judge to set a conference for discussing the parties' dispute.

6) The deadlines for identifying[7] expert witnesses expected to testify at the trial, (both retained experts, (Fed. R. Civ. P. 26(a)(2)(B)), and non-retained experts, (Fed. R. Civ. P. 26(a)(2)(C)), are:

    For the plaintiff:          January 15, 2019.

    For the defendant(s):       February 15, 2019.

7) Promptly following the identification of experts, the parties shall confer to schedule expert witness depositions, with Plaintiff's experts scheduled to be deposed on or before March 12, 2019, and Defendants' expert witness depositions scheduled to be held on or before May 3, 2019. Depositions regarding any rebuttal opinions must be taken on or before May 10, 2019, and counsel shall plan accordingly.

8) The deadlines for complete expert disclosures for all experts expected to testify at trial, (both retained experts, (Fed. R. Civ. P. 26(a)(2)(B)), and non-retained experts, (Fed. R. Civ. P. 26(a)(2)(C)), are:

    For the plaintiff:          January 29, 2019.

    For the defendants:         March 29, 2019.

    Any rebuttal:               April 12, 2019.

9) The deposition deadline is May 10, 2019.

---

[7] Identification includes the name, address, and area of expertise.

10)   The deadline for filing motions to dismiss and motions for summary judgment is April 30, 2019.

11)   The deadline for filing motions to exclude testimony on *Daubert* and related grounds is May 21, 2019.

12)   Motions in limine shall be filed <u>seven days before the pretrial conference</u>. It is not the normal practice to hold hearings on motions in limine or to rule on them prior to the first day of trial. Counsel should plan accordingly.

13)   All requests for changes of deadlines or settings established herein shall be directed to the undersigned magistrate judge, including all requests to change the trial date. Such requests will not be considered absent a showing of due diligence in the timely progression of this case and the recent development of circumstances, unanticipated prior to the filing of the motion, which require that additional time be allowed.

January 12, 2019.

                                        BY THE COURT:

                                        *s/ Cheryl R. Zwart*
                                        United States Magistrate Judge