UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CENTRAL VALUE AG COOPERATIVE, For itself and as sponsor for the Central Valley Ag Cooperative Health Care Plan, | ) ) ) ) | Civil Action No. 8:17-CV-379 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6) |
| DANIEL K. LEONARD, SUSAN LEONARD, THE BENEFIT GROUPS, INC., ANASAZI MEDICAL PAYMENT SOLUTIONS, INC. d/b/a ADVANCED MEDICAL PRICING SOLUTIONS, CLAIMS DELEGATE SERVICES, LLC and GMS BENEFITS, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

TO: GMS BENEFITS, INC. AND SHERRETS BRUNO & VOGT, LLC, its counsel of record.

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiff will take the deposition upon oral examination, to be recorded by stenographic means, at the offices of Sherrets Bruno & Vogt, 260 Regency Parkway Drive, Omaha, Nebraska 68114, of GMS Benefits, Inc. ("GMS"). GMS is requested to designate the person or persons most knowledgeable and prepared to testify on behalf of GMS concerning the subject matters described on Attachment A hereto. The deposition(s) will commence at 9:00 a.m. on April 17, 2019. If necessary, the deposition will be adjourned until completed.

Dated this 11th day of April, 2019.

1

CENTRAL VALLEY AG COOPERATIVE, for itself and as Fiduciary of the CENTRAL VALLEY AG COOPERATIVE HEALTH CARE PLAN, Plaintiff

By: */s/ René E. Thorne*
Michaelle L. Baumert, NE #20948
Kenneth M. Wentz, III, NE #23580
JACKSON LEWIS P.C.
10050 Regency Circle, Suite 400
Omaha, NE 68114
Phone: (402) 391-1991
Fax: (402) 391-7363
Email: Michaelle.Baumert@jacksonlewis.com
Email: wentzk@jacksonlewis.com

René E. Thorne (admitted *pro hac vice*)
JACKSON LEWIS P.C.
650 Poydras Street, Suite 1900
New Orleans, Louisiana 70130
Phone: (504) 208-1755
Fax: (504) 208-1759
Email: ThorneR@jacksonlewis.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of said filing to all counsel of record.

*/s/ René E. Thorne*

# ATTACHMENT A

**Definitions:**

The term "AMPS" means Anasazi Medical Payment Solutions, Inc. d/b/a Advanced Medical Pricing Solutions.

The term "CDS" means Claims Delegate Services, LLC.

The term "TBG" means The Benefit Group, Inc.

The term "GMS" means GMS Benefits, Inc.

The term "CVA" means Central Valley Ag Cooperative.

The term "CVA Plan" means the Central Valley Ag Cooperative Health Care Plan.

The term "MBR" means Medical Bill Review services pursuant to the "Medical Bill Review Services Addendum" and related agreements.

The term "RBR" means Reference Based Reimbursement services pursuant to the "RBR Program Services Agreement" and related agreements.

**Matters for Examination:**

1. Training provided to GMS and TBG regarding sale of AMPS/CDS services to the CVA Plan and other Plans.

2. Training provided to CVA participants and CVA regarding the MBR program.

3. Training provided to CVA participants and CVA regarding the RBR program.

4. Meetings, discussions, or communications with TBG and/or AMPS regarding proposing MBR and RBR to the CVA Plan.

5. Marketing of the MBR and RBR programs to CVA and other Nebraska based Plans, and proposals for MBR and RBR to CVA.

6. All communications to CVA that GMS witnessed or had knowledge of, regarding what the Plan could expect with regard to balance billing, direct negotiations, performance of the MBR and RBR programs services, and participants being turned away from providers as the MBR and RBR programs were marketed to CVA in 2014 for Plan Year 2015, and in 2015 for Plan Year 2016.

7. Revision of CVA Plan language to support MBR and RBR services.

8. Process by which the CVA Plan documents and other contractual documents were provided to CVA for review and signature.

9. Communications by GMS with CVA and TBG regarding CVA Plan documents and other contractual documents, and the process by which CVA signatures were obtained.

10. Communications with CVA regarding stop loss coverage for Plan Year 2015.

11. Communications with CVA regarding stop loss coverage for Plan Year 2016.

12. Communications with AMPS/CDS and TBG regarding savings levels that would be presented to CVA relative to the AMPS/CDS MBR and RBR programs.

13. Communications with AMPS/CDS and TBG regarding problems related to the MBR and RBR programs, and the impact these problems had on Plan participants.

14. For CVA Plan participants, balance billing and being turned away by providers, including provider communications to those served by TBG being asked to private pay.

15. Plans serviced by GMS and TBG together with AMPS/CDS prior to 2015 and 2016, and those still serviced by GMS and TBG together with AMPS/CDS after Plan Year 2016, including the experience of those Plans with savings, the size of those other Plans, and the number of claims put to MBR and RBR review by those Plans.

16. Advice offered by GMS to CVA for purposes of selecting coverage and services to the CVA Plan for Plan Years 2015 and 2016.

17. Interaction of the applicable Plan document with the MBR program and attendant agreements in Plan Year 2015.

18. Interaction of the applicable Plan document with the RBR program and attendant agreements in Plan Year 2016.

19. Due diligence by AMPS/CDS for implementation of the MBR program for CVA and other Nebraska Plans.

20. Due diligence by AMPS/CDS for implementation of the RBR program for CVA and other Nebraska Plans.

21. The direct contract negotiation process for the CVA Plan, including when it began, what facilities were involved, efforts made to negotiate direct contracts for the CVA Plan, the decision to begin direct contract negotiations.

22. The decision to offer RBR for the CVA Plan and other Nebraska based Plans also served by TBG in 2015.

23. The lawsuit filed against AMPS, TBG, the CVA Plan and other Plans by the Nebraska Methodist network of providers in or about May of 2016 and all communications by GMS with the CVA Plan and the other defendants in that lawsuit regarding that lawsuit.

24. Process by which the MBR "primary assessment reports" "final assessment reports" MBR "Reports of Recommendation" and RBR "Reports of Recommendation" and any other reports were created and transmitted to TBG and/or CVA regarding MBR or RBR determinations, and efforts by AMPS/CDS to ensure that these reports were provided to CVA.

25. Amount of fees or monetary compensation of any kind, from any source whasoever, that GMS collected or received for providing services to, or related in any way to, the CVA Plan, and the sources, method and means of receipt of those payments.

26. Amount of fees GMS was aware TBG and AMPS/CDS charged the CVA Plan for services during Plan Years 2015 and 2016, and the known sources, method and means of receipt of those payments.

27. Contracting between AMPS/CDS and TBG, and negotiation process for this contracting.

28. Contracts and agreements associated with the CVA Plan that would have been used or impacted by the AMPS and CDS MBR and RBR services, including the 2015 and 2016 ASA's, the MBR contracting, the RBR contracting, and the 2015 and 2016 Plan documents.

29. CDS advocacy process and the activities taken by CDS advocates on behalf of CVA Plan participants.

30. Balance billing of participants of the CVA Plan, collections actions, and CVA participants turned away by providers, including the AMPS/CDS obligation to assist them and how AMPS/CDS abided by that obligation.

31. The basis of claims regarding the chance of success of the MBR and RBR programs for the CVA Plan.

32. The basis of savings information provided to GMS or TBG at any time for purposes of presenting that information to the CVA Plan.

33. All MBR and RBR savings information presented to the CVA Plan by GMS or the Leonards, regardless of the source of the savings information.

34. Disclosures to CVA regarding the actual performance of the MBR and RBR programs, and issues with the advocacy program, balance billing, collections.

35. The various concerns raised by TBG and GMS and the Leonards regarding the performance of the MBR and RBR programs, and the AMPS/CDS response to those concerns.

36. The "1.6 for TBG" under RBR repricing applied to Critical Access Hospital, as referenced in AMPS_CDS_0048300.

37. Any exhibit attached to any document submitted by any defendant in discovery, including in depositions.

38. Any exhibit attached to any document submitted by Plaintiff in discovery, including in depositions.

39. Due diligence undertaken by GMS of AMPS or CDS before recommending either to CVA.

4816-4591-5278, v. 1