IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CENTRAL VALLEY AG COOPERATIVE, for itself and as Fiduciary of the Central Valley Ag Cooperative Health Care Plan,

Plaintiff,

vs.

DANIEL K. LEONARD, SUSAN LEONARD, THE BENEFIT GROUP, INC., ANASAZI MEDICAL PAYMENT SOLUTIONS, INC., CLAIMS DELEGATE SERVICES, LLC, and GMS BENEFITS, INC.,

Defendants.

8:17CV379

MEMORANDUM AND ORDER

The following motions are pending before me and fully submitted:

| | |
|---|---|
| Filing No. 178 | Motion to Compel filed by The Benefit Group, Inc. (TBG) for Production of Unredacted Kutak Rock Invoices; |
| Filing No. 181 | Plaintiff's Motion to Compel Production of Documents from Defendant TBG; and |
| Filing No. 184 | Plaintiff's Motion to Compel Production of Documents from Defendants Anasazi Medical Payment Solutions, Inc. (AMPs), and Claims Delegate Services, LLC (CDS). |

For the reasons discussed below, TBG's motion, (Filing No. 178) will be granted; Plaintiff's motion to compel directed to TBG (Filing No. 181), will be denied; and as to Plaintiff's motion to compel, (Filing No. 184), AMPs and CDS will be ordered to confirm that its production is complete and state under oath that all requested documents have been produced.

TBG's Motion to Compel Production of Unredacted Kutak Rock Invoices
(Filing No. 178)

Plaintiff Central Valley Ag Cooperative (CVA) alleges Defendants violated ERISA by failing to pay, or to adequately pay, claims submitted by health care providers to the Central Valley Ag Cooperative Health Care Plan (the "Plan"). As part of its damage claim, Plaintiff seeks recovery of $138,000 in attorney fees CVA paid to the Kutak Rock law firm, and over $17,000 in fees it paid to Plaintiff's expert, Jean Reed, to negotiate and settle the unpaid or partially paid claims against the Plan. (Filing No. 180-5, at CM/ECF p. 3, ¶¶ 8-9).

In discovery, TBG demanded production of the Kutak Rock billing documents underlying Plaintiff's $138,000 damage claim. CVA has provided redacted versions of those documents, and asserts the portions redacted are protected from disclosure under the attorney-client privilege and the work product doctrine. (Filing No. 180-4). TBG argues any privilege or work product protection was waived when CVA placed the invoices and the work they reflect at issue. TBG seeks unredacted invoices.

Federal courts follow federal attorney-client privilege law in all federal cases other than civil diversity actions (Fed. R. Evid. 501), and apply the federal work product doctrine in all federal cases. Baker v. GMC, 209 F.3d 1051, 1053 (8th Cir. 2000). Plaintiff seeks recovery under ERISA. Thus, the question presented is whether, as to both the attorney-client privilege and the work product doctrine, federal law permits Plaintiff to redact information from the Kutak Rock invoices supporting CVA's claim to recover attorney fee expenses.

Under federal attorney-client privilege law, when a party places privileged matters at issue as evidence in a case, it thereby waives the privilege as to all related privileged matters on the same subject. Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974) (applying federal law). The "at issue" implied waiver of the attorney-client privilege was explained by the United States Supreme Court in in Hunt v. Blackburn, 128 U.S. 464 (1888). As explained in Hunt,

> The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure. But the privilege is that of the client alone, and no rule prohibits the latter from divulging his own secrets.

Hunt, 128 U.S. at 470 (1888).

Where a party places the attorney's services at issue in the case, any privilege as to the services rendered is waived. Id. Allowing the attorney-client privilege to shield documents at the heart of the proponent's case would undermine the adversary system by permitting only one side to have full access to the facts. A party's reliance on its own attorney's communications to advance a claim is a waiver as to all other communications on the same matter "because the privilege of secret communication is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former." United States v. Woodall, 438 F.2d 1317, 1324 (5th Cir. 1970) (applying federal law).

Similarly, any entitlement to work product protection is waived when a party relies on the work product to assert a claim for recovery. Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726 (8th Cir. 2002) (applying federal work product

3

law). In Pamida, Plaintiff filed a lawsuit for indemnification seeking recovery of legal expenses it incurred to defend itself in a patent infringement case. Pamida held that this claim for fee recovery put "the work of its attorneys directly at issue in the case," and applying the privilege under these circumstances would deny [Defendant's] access to vital information peculiarly possessed by the attorneys necessary to defend against [Plaintiff's] claims" for recovery of expended attorney fees. Pamida, 281 F.3d at 731. Plaintiff had thereby "impliedly waived the work product privilege by bringing the indemnification action in which the information allegedly protected is crucial and unavailable by other means." Pamida, 281 F.3d at 732.

Here, CVA claims a right to recover amounts paid to Kutak Rock for negotiating and settling insurance claims, arguing it would not have incurred these attorney expenses but for the Defendants' violations of ERISA. To recover this element of damages, Plaintiff will have to prove the fees paid to Kutak Rock were fair, reasonable, and necessary, and that they arose due to Defendants' alleged misconduct, failure to act, misrepresentations or concealment of material facts. In turn, Defendants are entitled to challenge those aspects of Plaintiff's case, but they cannot fully do so without knowing the content and purpose of Kutak Rock's work which underlies each billing entry, and Plaintiff has not suggested any alternative or preferred means to obtain the information it chose to redact from the Kutak Rock invoices.

The court therefore finds that any privilege or work product protection afforded to the redacted portions of the Kutak Rock billing statements was impliedly waived when Plaintiff chose to seek recovery of amounts it paid to Kutak Rock. TBG is entitled to unredacted Kutak Rock invoices for fees Plaintiff seeks to recover in this lawsuit.

4

Plaintiff's Motion to Compel Production of Documents from Defendant TBG
(Filing No. 181)

Before the above-captioned lawsuit was filed, six hospitals sued TBG, AMPs, and nine employee benefit plans, including the Central Valley Ag Flexible Benefit Plan in the District Court of Douglas County, Nebraska. (See, Filing No. 183, at CM/ECF p. 4 (Nebraska Methodist Hospital, et al., v. Cooperative Producers, Inc. Group Benefit Plan, Case No. CI 16-4230 (Douglas Cty Dist Ct. May 19, 2016) (hereinafter the "Nebraska Methodist litigation"). The state court complaint sought damages of over $1,000,000, alleging:

> This action arises from the Benefit Plans' failure to pay for charges incurred by their participants for goods and services rendered by the Hospitals at rates contractually agreed in advance through the parties' participation in a preferred provider organization known as the First Health Network. The failure of the Benefit Plans to honor their obligations was induced by TBG and AMPS, administrators and consultants to the Benefit Plans, and agents of the Benefit Plans, who though aware of the obligations of both the Benefit Plans and the Hospitals in the First Health Network, initiated and caused the Benefit Plans' failure to pay at contracted rates.

(Filing No. 183, at CM/ECF p. 5, ¶ 1).

Fraser Stryker (TBG's counsel herein) offered to provide legal services to defend all the plans named in the Nebraska Methodist litigation, with the cost of that defense paid by AMPs. (Filing No. 183, at CM/ECF pp. 28-39). It circulated a proposed multiple representation agreement to all the plan defendants which stated:

> One of the necessary consequences of joint representation of multiple clients by a single lawyer or law firm is the sharing of confidential information concerning the subject matter of the joint representation. The Clients acknowledge and agree that communications between the firm and each of them relating to this

5

> matter will be treated as confidential and will not be disclosed to third parties without informed consent or as otherwise permitted by the applicable rules of professional conduct or other law. The Clients also acknowledge and agree that whatever relevant or material communications or information that we receive concerning this matter, including communications from each or any of them, will be shared with the other Clients as we consider appropriate.

(Filing No. 183, at CM/ECF p. 32).

In above-captioned litigation, CVA demands that TBG produce all documents and communications in the Nebraska Methodist litigation between TBG, its counsel, and/or any other defendant in that case or its counsel, (Request No. 34); between TBG and any third party, (Request Nos. 35 and 38); and between TBG and any attorneys representing TBG and representing or purporting to represent the other defendants in the Nebraska Methodist litigation, (Request No. 36). (Filing No. 183, at CM/ECF pp. 44-45). TBG has produced the documentation of its communications with opposing counsel and third parties in the Nebraska Methodist litigation. However, citing the attorney-client privilege and work product doctrine, TBG refuses to produce documentation of communications between the Fraser Stryker firm and other parties to the shared representation agreement.

TBG argues the communications between its attorney and its clients under the shared representation agreement are privileged. CVA claims the documents TBG is withholding are not privileged because the parties to the shared representation agreement with Fraser Stryker agreed that "all documents will be shared with the other Clients as [Fraser Stryker] consider[s] appropriate." (Filing No. 183, at CM/ECF p. 32). CVA argues this wording of the agreement waives any privilege as to releasing and distributing attorney-client and work product information among the parties.

6

There is an odd disconnect between CVA's factual statements and its argument. On one hand, CVA states it never agreed to Fraser Stryker's representation of the Central Valley Ag Flexible Benefit Plan in the Nebraska Methodist litigation; on the other hand, it argues it is entitled to enforce the shared information terms of a multiple representation agreement with Fraser Stryker. CVA states Fraser Stryker entered an appearance, filed an answer, and began representing the Central Valley Ag Flexible Benefit Plan in the Nebraska Methodist litigation without CVA's consent. (Filing No. 183, at CM/ECF p. 3). In support of this claim, CVA refers to the Answer and Affirmative Defenses of the Benefit Group, Inc. to Plaintiffs' Complaint filed in the Nebraska Methodist litigation and filed on record in this case as Filing No. 183, at CM/ECF pp. 18-27. The court is not convinced the cited document supports CVA's position. Moreover, CVA's argument is wholly refuted by other evidence of record. Fraser Stryker not only sought, but it also received consent to multiple representation from the Central Valley Ag Flexible Benefit Plan, the actual party to the Nebraska Methodist litigation, (Filing No. 21-2, at CM/ECF p. 24). Moreover, the inconsistent stances of CVA and the Central Valley Ag Flexible Benefit Plan with respect to representation by Fraser Stryker belies any claim that these entities differ in name but are otherwise the same.

CVA states that in the Nebraska Methodist litigation, "CVA was the client. . . ." (Filing No. 182, at CM/ECF p. 2). But as the state court found in CVA's attempted malpractice action against Fraser Stryker, neither CVA, nor the Central Valley Ag Cooperative Health Care Plan were named defendants in the Nebraska Methodist litigation. Thus, CVA was not Fraser Stryker's client in that lawsuit. (Filing No. 201-1, at CM/ECF p. 4-5).

The court has reviewed the privilege log produced by TBG. ([Filing No. 201-1, at CM/ECF pp. 6-66](#)). The entries therein reflect that TBG has withheld documentation of communications between attorneys and between attorneys and clients that were exchanged during the scope of counsel's representation in the Nebraska Methodist lawsuit. CVA is the plaintiff in the above-captioned federal lawsuit, but it was not a named defendant in the Nebraska Methodist litigation. As such, CVA was not a party to the multiple representation agreement signed by the Central Valley Ag Flexible Benefit Plan for the Nebraska Methodist lawsuit.

CVA cannot enforce the shared information terms of the multiple representation agreement, an agreement to which it was never a party—particularly terms that would purportedly waive the attorney-client and work product protection owed to other clients of the Fraser Stryker law firm. Plaintiff's motion to compel TBG to produce additional documents in response to document production requests 34, 35, 36, and 38 will be denied.

<u>Plaintiff's Motion to Compel Production of Documents from AMPs and CDS</u>
([Filing No. 184](#))

Plaintiff moves to compel production of additional documents in response to requests No. 10, 26 and 30 of CVA's Requests for Production of Documents served on AMPs and CDS. Subject to agreements between the parties limiting the breadth of Plaintiff's requests, those requests at issue demand production of:

> Request No. 10: All marketing materials, sales contracts, agreements, policies and protocols used or relied upon by AMPS during the period of January 1, 2013 through the present, including information on the AMPS website and other online marketing materials of any kind.

8

> Request No. 26: All Documents showing the data upon which you base the percentage savings reflected on the map of the United States that appeared on AMPS' website at any time between January 1, 2014 and the present.
>
> Request No. 30: All Documents (including video) showing the content of AMPS website as it existed in years 2013 through the present.

Filing No. 186, at CM/ECF p. pp. 6-10.

In response to the motion, AMPs and CDS state the motion to compel is now moot, explaining:

> Consistent with the undersigned's representation to CVA's counsel on March 14, 2019, AMPS and CDS have produced the following: (a) underlying data supporting the representation on AMPS's website of potential savings in CVA's geographic region; and (b) additional AMPS marketing and educational materials that may have been provided to TBG and/or GMS, either directly or indirectly, including, without limitation, CDS "Advocacy Overview" materials. This production should obviate the pending Motion to Compel Discovery, which CVA's counsel represented would be withdrawn if the materials requested by CVA were produced.

(Filing No. 196, at CM/ECF p. 2).

Plaintiff argues the motion to compel is not necessarily moot. Citing the testimony of John Powers, (Filing No. 210-1), Plaintiff states the corporate representative for AMPs "alluded to additional information remaining available." (Filing No. 209, at CM/ECF p. 3). Plaintiff states that "[d]uring his deposition, John Powers implied on multiple occasions that there were additional responsive documents that Plaintiff has yet to receive." (Filing No. 209, at CM/ECF p. 3). Plaintiff seeks confirmation that everything has been produced.

9

The court has reviewed Mr. Powers' deposition and agrees that on occasion, he seems to unclear on whether the documents produced are the versions of marketing materials and savings projections were presented to Plaintiff. Mr. Powers explained that the marketing documents were modified over time, and during the deposition, he was not always able to identify the publication date of the materials marked as exhibits.

AMPs and CDS will be ordered to confirm that all documents responsive to Requests 10, 26, and 30 have been produced. Once that occurs, (which may have already happened), they shall provide a statement under oath affirming that subject to the parties' agreement limiting the breadth of the requests, all documents responsive to Requests 10, 26, and 30 have been produced to the plaintiff.

Accordingly,

IT IS ORDERED:

1) TBG's motion to compel production of unredacted copies of the Kutak Rock invoices, (Filing No. 178), is granted, and the unredacted invoices shall be produced on or before May 10, 2019.

2) Plaintiff's motion to compel directed to TBG, (Filing No. 181), is denied.

3) As to Plaintiff's motion to compel directed to AMPs and CDS, (Filing No. 184), these defendants are ordered to:

    a.    Promptly confirm that as limited by the parties' agreement regarding the breadth of the requests, all documents responsive to Requests 10, 26, and 30 have been produced to the plaintiff, and

    b.    On or before May 10, 2019, AMPs and CDS shall provide a statement under oath affirming that all such requested documents have been produced.

April 29, 2019.

                                            BY THE COURT:

                                            *s/ Cheryl R. Zwart*
                                            United States Magistrate Judge