IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CENTRAL VALLEY AG COOPERATIVE, for itself and as Fiduciary of the Central Valley Ag Cooperative Health Care Plan;<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL K. LEONARD, SUSAN LEONARD, THE BENEFIT GROUP, INC., ANASAZI MEDICAL PAYMENT SOLUTIONS, INC., CLAIMS DELEGATE SERVICES, LLC, and GMS BENEFITS, INC.,<br><br>Defendants. | 8:17CV379<br><br>ORDER |

Plaintiff's motion to supplement the opinions of its expert, Rachel Harris, ([Filing No. 219](#)), is now pending before me and fully submitted. For the reasons stated below, the motion will be denied.

FACTUAL BACKGROUND

This lawsuit was filed on October 11, 2017. (Filing No 1). The undersigned magistrate judge has previously and extensively outlined the significant progression and discovery hurdles encountered in preparing this case for trial. ([Filing No. 151](#)). That history is supplemented but not repeated herein.

The court's order entered on January 12, 2019 extended the expert disclosure deadlines as follows:

The deadlines for complete expert disclosures for all experts expected to testify at trial, (both retained experts, (Fed. R. Civ. P. 26(a)(2)(B)), and non-retained experts, (Fed. R. Civ. P. 26(a)(2)(C)), are:

    For the plaintiff:      January 29, 2019.

    For the defendants:   March 29, 2019.

    Any rebuttal:        April 12, 2019.

([Filing No. 151](#)).

Plaintiff timely produced the report of its expert, Rachel Harris, on January 29, 2019. ([Filing No. 219-1, at CM/ECF p. 1](#); [Filing No. 245-1](#)). Ms. Harris summarized her opinions as follows:

> As a result of my study, understanding and use of the aforementioned facts, assumptions and data provided to me by counsel for Plaintiff, and as summarized herein, I conclude the following:
>
> • It is my expert opinion that TBG and AMPS routinely reprocessed CY 2015 and CY 2016 claims for no discernible reason other than their administrative errors. Further, that insufficient methodologies and internal controls were in place by either TBG or AMPS to prevent and correct such errors resulting in overstated gross charges over $4.SM across CY 2015 and CY 2016, as drove program and claims administration fees.
>
> • It is my expert opinion that insufficient methodologies and internal controls were in place to accurately determine provider and service type eligibility under the services agreement definitions of hospital and facility claims, resulting in approximately $395K and $1.2M in AMPS overpayments for CY 2015 and CY 2016, respectively.
>
> • It is my expert opinion that insufficient methodologies and internal controls were in place to accurately determine MBR

> program eligibility and related AMPS fees, resulting in excess fees paid by CVA in CY 2015 of approximately $86K.
>
> • It is my expert opinion that insufficient methodologies and internal controls were in place to accurately determine RBR program fees, resulting in excess fees paid by CVA in CY 2016 of approximately $49K.
>
> • It is my expert opinion that the CY 2017 claims volume, gross charges and payment levels under a more PPO based model, as well as the sophistication and transparency of CY 2017 TPA reporting is indicative of a better performing practice plan and program administration.
>
> • **It is my expert opinion that, specific to the scope of services requested of me and the results of the analyses performed and summarized herein that CVA incurred approximately $1.8M in fiscal damages as a result of its service agreement relationship with TBG and AMPS**.
>
> • **It is my expert opinion that TBG and AMPS spent time away from productive plan and program administration resulting in additional losses that while difficult to value, assuredly resulted in additional fiscal damages to CVA**.

([Filing No. 245-1, at CM/ECF p. 4](#)) (bolding in original).

On February 15, 2019, Plaintiff served a supplemental interrogatory answer, therein claiming "[a]s per Plaintiff's expert reports," Plaintiff incurred damages of "$1,800,000 in overpayments to and through Defendants for Plan Years 2015 and 2016." ([Filing No. 242-3, at CM/ECF p. 1](#)).

Defendants deposed Harris on February 27, 2019. ([Filing No. 219-1, at CM/ECF p. 1](#)). During that deposition, Harris explained that she was not "engaged to do any kind of forensic trail to verify the exact amounts that CVA paid to AMPS

on specific claims." ([Filing No. 253-1, at CM/ECF p. 8](#)). "The scope of my work was the calculation of the data that was provided." Id. She was not asked to perform "a forensic review of what fees were paid on each specific claim." Id.

When asked if she needed more data to formulate her opinions, Harris responded that she could have used "[a]dditional claims information, the complete posting of financials to each claim, and the revenue code, the full claims data, as well as the full practice management system posting, financial posting, at a claims level." ([Filing No. 226, at CM/ECF p. 9](#)). However, she acknowledged that the absence of this data "did not hinder the analytics I completed, but I could have completed additional, more comprehensive, had I had that." (Id.)

During her deposition, Harris referred to an Excel spreadsheet she named "TBG Detail." She had created this document by combining the "Claims Detail History" files for the years at issue. The Claims Detail History files were disclosed to CVA's expert, Lutz and Associates, as searchable and sortable native Excel spreadsheets on November 27, 2017. ([Filing No. 242, at CM/ECF p. 1](#)). The Claims Detail History listed all payments TBG made to AMPS and all refunds received, identifying the name of the claimant, the claim number, the dates of service, the date the claim was received, the date the claim was processed, the date the claim was paid, the name of the service provider, the provider's tax identification number, a description of the service, total billed charges, allowable charges, not covered amount, PPO savings, amount paid by other insurance, coinsurance, deductible, amount paid by TBG on behalf of CVA, the check number for the payment, the claim number, and other data. The Claims Detail History provided "the claim number for each AMPS payment so that all payments to AMPS were tied to specific claimants and claims." ([Filing No. 242-2, at CM/ECF p. 2](#)). Using Excel's features, Harris could have sorted the data several ways; for

example, she could have determined how much AMPs was actually paid for its services, ([Filing No. 242-2, at CM/ECF p. 1-2](#)), and during the deposition, she was able to identify refund entries. ([Filing No. 226, at CM/ECF p. 34](#)).

To formulate her opinions, Harris reviewed AMPs' invoices, ([Filing No. 226, at CM/ECF p. 48](#)), but she did not review bank deposits, checks, or the checks paid register, explaining review of such documentation was beyond the scope of her work, ([Filing No. 226, at CM/ECF p. 42](#)), and she considered this documentation to be irrelevant. ([Filing No. 226, at CM/ECF p. 56-57](#)). Harris explained that she arrived at her damage opinion by multiplying the billed charges for all the claims she was provided by 12.5 percent. She did not determine what AMPs was actually paid, stating a review of service or claims-level payment amounts to determine or validate her damage calculations was beyond the scope of her work. ([Filing No. 226, at CM/ECF p. 51](#)). The entirety of Harris' analysis of overpayments was based on a calculation applied to an assumption as opposed to an actual determination of what CVA paid to AMPs. ([Filing No. 226, at CM/ECF p. 194](#)). Using this methodology, Harris concluded AMPs was paid $1.8 million dollars, while the data in the Claims Detail History and the numbers CVA reported to the Department of Labor indicate AMPs actually received $1.3 million. ([Filing No. 226, at CM/ECF p. 62-63](#)). Harris acknowledged that a $1.8 million damage calculation for payments made to AMPs was mathematically impossible if AMPs was paid only $1.3 million. ([Filing No. 226, at CM/ECF pp. 61](#), 68).

During a discovery dispute conference held on March 1, 2019, the court addressed Plaintiff's demand for production of TBG's "Checks Paid Register by Claim" and AMPs' documentation of credits and refunds. ([Filing No. 219, at CM/ECF p. 2](#)). See also the attached. The Checks Paid Register by Claims reports were disclosed by TBG to CVA's accountant, BKD, Ltd. on April 2, 2018, ([Filing

5

No. 142-1, at CM/ECF p. 2; Filing No. 242-2, at CM/ECF p. 3), and they were referenced in TBG's discovery responses, but Plaintiff's counsel states they never saw them.

The Checks Paid Register by Claim documents contain the same information as the Claims Detail History documentation already in Harris' possession at the time of her deposition. Specifically, Checks Paid Register by Claim reports are produced in a different format but they include a subset of the data already disclosed to Plaintiff in the Claims Detail History—the identify each check number, check date, claim number, payee, claimant, employee and check amount. (Filing No. 242-2). In addition, months before Harris' deposition, TBG produced its checks and bank statements, including check numbers, which could have been used by Harris to cross-check and verify the information within the Claims Detail History. (Filing No. 242-2).

During the course of the conference call held on March 1, 2019, the court ordered TBG and AMPs to produce the requested documents in the interest of assuring Plaintiff had everything it wanted. In accordance with that order, TBG produced the Checks Paid Register by Claims documents to Plaintiff's counsel on March 1, 2019 and AMPs produced additional credit and refund information on March 6, 2019. (Filing No. 219, at CM/ECF p. 2).

On March 8, 2019, Plaintiff supplemented its discovery responses to TBG's interrogatories, therein removing Harris' $1.8 million damage assessment and replacing it with a claim for:

> Payments on duplicate claims and claims outside the scope of contractual review, to and through Defendants for Plan Years 2015 and 2016, for which Plaintiff may be allowed to submit a revised expert report, after review of documents recently produced by Defendants

([Filing No. 242-1, at CM/ECF p. 2](#)).

The expert report for AMPs and CDS was served on March 29, 2019. ([Filing No. 204](#)).

Plaintiff did not serve a rebuttal expert report on April 12, 2019, the deadline for doing so. Instead, on April 12, 2019, it filed a motion to supplement the report of its expert, Rachel Harris. Harris states she has analyzed the Checks Paid Register by Claims and credit and refund documents produced in March of 2019 and "I have concluded that they are directly relevant to my prior Report and testimony." ([Filing No. 219-1, at CM/ECF p. 2](#)). Harris explains:

> [M]y prior Report and deposition testimony must be amended and supplemented in order to be complete and correct. I have read the report of Defendant's expert Kristina Swailes, and it is clear that she relied upon this information in rendering her Report in this case.

([Filing No. 219-1, at CM/ECF p. 2](#)). Plaintiff has not disclosed Harris' current opinions or otherwise explained how this expert's opinions have changed.

ANALYSIS

Under this court's local rules:

> A motion raising a substantial issue of law must be supported by a brief filed and served together with the motion. The brief must be separate from, and not attached to or incorporated in, the motion or index of evidence. The brief must concisely state the reasons for the motion and cite to supporting authority. A party's failure to brief an issue raised in a motion may be considered a waiver of that issue. The brief must not recite facts unless supported as described in Nebraska Civil Rule 7.1(a)(2).

NECivR 7.1(a)((1)(A)). A motion to supplement an expert's opinion beyond the expert disclosure deadline clearly presents substantial legal issues of how Rules 26 and 16 apply to the facts of this case. Here, a brief would have helped the court understand the basis for Plaintiff's substantive arguments in support of the motion. With no disclosure of what Harris' opinions would now be if supplementation was allowed, the court is left wondering if Plaintiff is requesting leave to: 1) disclose corrected opinions based on information only recently obtained; 2) provide additional reasoning and depth for opinions already disclosed; 3) disclose opinions to rebut those of Defendants' expert, or 4) disclose wholly new opinions beyond the expert disclosure deadline.

Yet Plaintiff did not provide a brief in support of its motion, and it filed no Reply to the briefs filed by TBG and AMPs/CDS opposing Plaintiff's motion. For this procedural reason alone, the court finds Plaintiff has waived its request for leave to supplement Harris' opinions.

Notwithstanding the lack of any substantive briefing and associated waiver of Plaintiff's request to supplement Harris' opinions, the court further finds the motion should not be granted on the merits. As to the merits, the court must decide whether Plaintiff should be granted leave to serve additional expert opinions offered by Harris as supplemental opinions or, in the alternative, whether it has shown good cause to untimely serve new opinions as either rebuttal opinions, or opinions in support of its case-in-chief.

Under Rule 26(e) of the Federal Rules of Civil Procedure, a party must "supplement or correct" a prior disclosure based on information later acquired.

Rule 26(e) is self-executing. If the opinions are supplemental, a party must disclose those opinions even absent a court order granting leave to do so.

In opposition to the motion to exclude Harris' testimony, Plaintiff explains it is seeking leave to supplement the Harris Report because TBG and AMPs "admittedly failed to produce critical information in discovery, which its own expert relied on to attack the validity of the Harris Report." ([Filing No. 298, at CM/ECF p. 1](); [Filing No. 299, at CM/ECF p. 2]()). Upon review of the information of record, the court disagrees. Well over a year ago, TBG disclosed Claims Detail History files—easily searchable and sortable Excel files including all the information TBG and AMPs disclosed in March of 2019. The fact that refund and credit information, along with Checks Paid Register by Claim documents identifying each check number, check date, claim number, payee, claimant, employee and check amount were again disclosed, but in a different format, following Harris' deposition does not render this information new, and it does not excuse Harris' failure to consider it in the first instance.

> [Rule 26(e)] imposes a duty on the producing party to supplement information that is incorrect or incomplete. But it does not permit adding claims and issues which could have, and should have been included in the original report, and it 'does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the 'supplement' label.'' (citing Allgood v. Gen. Motors Corp., 2007 WL 647496, at *3 (S.D. Ind. Feb. 2, 2007) (citing Beller ex rel. Beller v. United States, 221 F.R.D. 689, 695 (D.N.M. 2003)( Rule 26(e) 'does not give license to sandbag one's opponent with claims and issues" which should have been raised earlier.')). See also Lindner v. Meadow Gold Dairies, Inc., 249 F.R.D. 625, 640 (D. Hawai'i 2008); Palmer v. Asarco Inc., 2007 WL 2254343, at *4 (N.D. Okla. Aug. 3, 2007).

Bowen v. Allied Prop. & Cas. Ins. Co., No. 4:11CV3163, 2012 WL 3303266, at *4 (D. Neb. Aug. 13, 2012) (Zwart, M.J.).

> A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1). 'To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given.' This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

Id. (quoting Cook v. Rockwell Int'l Corp., 2006 WL 3533049 *87 (D. Colo. Dec.7, 2006). A proper expert supplement does not attempt to gap-fill or strengthen a party's case-in-chief. Wenjia Zhai v. Cent. Nebraska Orthopedics & Sports Med., P.C., No. 4:16CV3049, 2017 WL 6557466, at *2 (D. Neb. Dec. 22, 2017).

The court finds Plaintiff has failed to show Harris' opinions must be supplemented because TBG and AMPs failed to timely disclose information.

Plaintiff may be seeking leave to disclose new opinions, either as opinions supporting its case-in-chief or as rebuttal opinions. Rebuttal experts must "explain, repel, counteract or disprove" evidence raised by an adverse party. Marmo, Inc., 457 F.3d at 759 (internal citation omitted). Under Fed. R. Civ. P. 26(a)(2)(D)(ii), rebuttal experts are those who present "evidence that is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). Proper rebuttal testimony should address only new arguments raised by the adverse party that could not have been anticipated previously. See ADT Sec. Servs., Inc. v. Swenson, 276 F.R.D. 278, 316 (D. Minn. 2011) (citing Eighth Circuit law). Put differently, rebuttal testimony should not be a mere continuation of a party's case-in-chief.

Marmo, 457 F.3d at 759. See also Zhai, 2017 WL 6557466, at *2 (D. Neb. Dec. 22, 2017).

Plaintiff argues that the opinions of Defendants' expert, Kristina M. Swailes, are based on information that CVA did not timely receive. But as the court has already explained, Harris had the same information as Swailes (although perhaps in a different format) before Harris disclosed her opinions, and she used that information during her deposition. Moreover, Swailes used the alleged untimely disclosed data solely to challenge Harris' opinions and the elements of Plaintiff's claims. See [Filing No. 309, at CM/ECF p. 6-9](). Any response Harris would make to Swailes' criticism of Harris' opinions is not rebuttal, and it did not address any new topics or defenses first disclosed by Swailes. Plaintiff has failed to show any need for additional time to disclose rebuttal opinions.

The remaining question is whether the court should permit Plaintiff to disclose new opinions in support of its case-in-chief after the deadline set by the court's case progression order. Pursuant to Rule 16(b)(4), a case management order "may be modified only for good cause and with the judge's consent." [Fed. R. Civ. P. 16(b)(4)](). The movant's level of diligence and the degree of prejudice to the parties are both factors to consider when assessing whether good cause warrants extending a case management deadline, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only after the movant makes a showing of due diligence. [Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008)](); [Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006)]().

Here, the court finds TBG and AMPs did not untimely disclose relevant information, and even if they had, Plaintiff possessed the information for at least

five weeks before moving to supplement Harris' opinions. And even when the motion was filed, it was not supported by any evidence disclosing Harris' new opinions or the need for more time to disclose them. Under such circumstances, Plaintiff has failed to prove the due diligence necessary to support a finding of good cause.

And even had Plaintiff proved due diligence, the prejudice of disclosing new opinions at this late stage of the case—post-summary judgment and only three months prior to trial—would prejudice the defendants. New opinions would require supplemental depositions and responsive expert disclosures, the re-filing of Daubert and summary judgment motions and briefs, and re-scheduling the trial.

Accordingly, and for all the foregoing reasons,

IT IS ORDERED that Plaintiff's motion to supplement the opinions of its expert, Rachel Harris, ([Filing No. 219](#)), is denied.

May 15, 2019.

            BY THE COURT:

            *s/ Cheryl R. Zwart*
            United States Magistrate Judge